UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
MARTY LORENZO WRIGHT,              )
                                   )
         Plaintiff,                )
                                   )
    v.                             )
                                   )  Civil Action No. 14-558 (ESH)
UNITED STATES DEPARTMENT OF        )
JUSTICE,                           )
                                   )
         Defendant.                )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.

BACKGROUND

In March 1997, Plaintiff Marty Lorenzo Wright (Wright) was found guilty in the Eastern District of Virginia of operating a continuing criminal enterprise involving a conspiracy to distribute controlled substances and firearms violations. *United States v.* Wright, Nos. 97-4554, 97-4557, 97-4563, 97-4555, 97-4561, 97-4564, 97-4556, 97-4562, 97-4565. (4th Cir.), 1997 WL 33493155 , Appellee's Brief at 2.  At trial at least ten (10) people who "worked for [Wright] or were directed by him at one time or another testified against him." *Id*. at 18-19.

The Appellants' brief in Wright's appeal from his conviction reflects that sixty three witnesses testified at trial and that many testified to criminal activities on their own part:

> the Government presented sixty-three witnesses and over two hundred exhibits in proof of the allegations of the indictments. Witnesses including Carletha Brown (Trial Transcript [hereinafter TT] 3039), Mitchell Jackson, Jr. (TT 205238),

Glenice Lawson (TT 329347), James Henry Walker (TT 377391), Roland Gresham (TT 438452) and Carla Taylor (TT 654664) testified to purchasing crack cocaine from Appellant Marty Wright for their own use. Other witnesses, including Freddie Walker (TT 63117), Kevin Walker (TT 117167), Mitchell Brown (TT 452629), Monte Moore (TT 552565) and Darryl Jones (TT 736808) testified to purchasing from Appellant Marty Wright for resale. Anthony Jackson (TT 284290), Norman Anthony Lucas (App. 399-464) and Darryl Jones (736808) testified to "working for" Appellant Marty Wright.

Similarly, witnesses including Glenice Lawson (TT 329347), James Henry Walker (TT 377391), Roland Gresham (TT 438454), Yolanda Jones (TT 700722) and William Green (TT 10201029) testified to purchasing crack cocaine and/or marijuana from Alleyne Wright for their own use, while Freddie Walker TT 63117) testified to purchasing cocaine through her for resale. Norman Anthony Lucas (App. 399-464) testified that she bought and sold cocaine and was involved with Marty Wright in his drug business.

Witnesses including Carletha Brown (TT 3039), Mitchell Jackson, Jr. (TT 205238), Anthony Parker (TT 290308), James Henry Walker (TT 377391), Jesse Boyd (TT 640654) and Yolanda Jones (TT 700722) testified to purchasing marijuana or crack cocaine for their own use from James Edward Greenhow, while Freddie Walker (TT63117), Kevin Walker (TT 117167), Mitchell Brown (TT 452529) and Freddie Givens (TT 664691) testified to purchasing from him for resale. Norman Anthony Lucas (App. 399-464) testified that Greenhow had his own clientele.

Witnesses including Feddie Walker (TT63117), Roland Gresham (TT 438454), Denova Surles (TT825844) and Jarvis Williams (TT 989996) testified to Orrie Holmes' being a seller of crack cocaine on an individual level. Freddie Walker (TT 63117) testified to selling crack cocaine to Holmes.

Several witnesses, including Freddie Walker (TT 63117), Kevin Walker (TT 117167) and Roland Gresham (TT 438454) testified that cocaine sales were made on a regular basis outside of Levi Hawkins' mobile home, which Hawkins used as a "shothouse", selling unlicensed alcoholic beverages, but most said they never saw Hawkins sell drugs and that in fact he would occasionally run off the dealers. Evidence was also offered by the Government that guns were owned by all of Appellants and sometimes used by Marty Wright. Richard Levi Hatchett (TT 275283), Jeremy Tyler (347368), *14 Mitchell Brown (TT 452529), Monte Moore (TT 552565), Norman Anthony Lucas (App. 399-472), Darryl Jones (TT 736808) and Mary Brown (TT 815821) all testified to being present at one or more of several shootouts in which Marty Wright was involved.

Jeremy Tyler (TT 347368), James Henry Walker (TT 377391), and Bruce Wallace (TT 875884) testified to being beaten by Marty Wright or by others at Marty's orders. The Government offered supportive evidence of this by physicians

2

> who treated Jeremy Tyler (TT 545551) and Bruce Wallace (TT 954959). Norta Espiet (TT 960969) testified that she and her daughter were, in August 1995, threatened by Marty Wright because of her involvement with D. Daniels with whom she had a relationship at the time Marty Wright was angry with him. Other government evidence served to localize the places of drug dealing. Numerous witnesses, including Norman Anthony Lucas App. 399-472), Carletha Brown (TT3039, Kevin Walker (TT 117167), Mitchell Jackson, Jr (TT 205238) and Mitchell Brown (TT 452529) testified to purchasing drugs or delivering drug money to the home at 119 Colby Road in James City County that Marty Wright and, at times, James Greenhow shared with Alleyne Reed Wright, who actually owned it. Others testified to purchasing or selling at Burton Woods Apartments and outside Levi Hawkins' trailershothouse. Although no one testified that they received drugs at the Garth Drive property in Virginia Beach, Mitchell *15 Brown (TT 452529), Norman Anthony Lucas (App. 399-464), Darryl Jones (TT 736808) and Novia Rivera (TT 9961010) gave testimony to indicate the property was purchased by Marty Wright's money and for him. Similar testimony was offered by Mitchell Brown (TT 452529) and Norman Anthony Lucas (App. 399-464) to link Marty Wright to partial ownership of the Triangle Auto used car lot in Newport News, Virginia.
>
> Several witnesses, including Kevin Walker (TT 117167), Jeremy Tyler (TT 545551) and James Henry Walker (TT 377391) testified to the formation of the Vapors gang, and that Marty Wright was the founder and leader of that gang.

*Id.,* 1997 WL 33493154 at * 12-13 (Appellate Brief).  It appears that it was disclosed that at least five individuals who testified against Wright did so by agreement with the government:

> The government failed to show that Marty Wright was in a position of organizer or manager with respect to the alleged drug distribution. The government relied on the testimony of five indicted coconspirators. These individuals had agreed to testify about their involvement with Marty Wright.

*Id.* at 24.

After his conviction Wright was sentenced to the equivalent of life in prison. *Id.* 1997 WL 33493154 at *9.

**Wright's Initial FOIA Request**

By letter dated May 30, 2013, Wright made a Freedom of Information Act (FOIA) request to the United States Attorney's Office in Virginia, requesting:

>1. Names of ···:all individuals granted Immunity in the case of United States v.
>Marty Lorenzo Wright, case numbers 4:95-cr-00044,and 4:95-cr-00039.
>2. Copies of Immunity letters-issued in case numbers 4:95-cr-00044 and
>4:95-cr-00039, United States v. Marty Lorenzo Wright.
>3. Name of Agents, Prosecutor, and for Judge who issued and signed the
>Immunity Agreements in the case of United States v. Marty Lorenzo Wright, case
>numbers 4:95-cr-00044 and 4:95-cr-00039.

(Exhibit 1.)  The Executive Office of United States Attorneys (EOUSA) responded on behalf of

the United States Attorney's Office as follows:

>It is the policy of the Executive Office neither to confirm nor deny that records
>concerning living third parties exist. Further, any release to you of such records, if
>they do exist, would be in violation of the Privacy Act. 5 U.S.C. § 552a. The
>requested material would also be exempt from release pursuant to 5 U.S.C. §
>552(b)(6) and/or (b)(7)(C) which pertain to records whose disclosure would result
>in an unwarranted invasion of personal privacy.

(Exhibit 2.)  Wright appealed the response to the DOJ, Office of Information Policy (OIP)

contending:

>2) The documents requested were withheld in violation of FEDERAL LAW,
>BRADY v. MARYLAND and the UNITED STATES CONSTITUTIONS 6th
>Amendment.[1]
>3)·The requested documents are evidence of PROSECUTORIAL
>MISCONDUCT.
>4) The documents requested meet the standard of an overriding FOIA public
>interest in disclosure, as it aids factual findings of a direct compromise
>of the UNITED STATES JUSTICE SYSTEM.
>5) The requested documents are evidence to substantiate whether a UNITED
>STATES citizen is being held illegally in violations of the laws and the
>UNITED STATES CONSTITUTION.
>6) The requested documents deal directly with the requester and pose no threat
>to any third party.
>The requested documents have a direct affect on the integrity of a criminal

---

[1] A criminal "defendant is entitled under *Brady* at least to the following information with respect to . . . cooperating witnesses who may testify at trial:  (1) the existence and substance of all promises of immunity, leniency or preferential treatment, including any written plea agreements and transcripts of plea proceedings . . . ."  *U.S. v. Edwards*,  191 F.Supp.2d 88, 90 (D.D.C. 2002); *see also U.S. v. Celis*,  608 F.3d 818, 834-835 (D.C. Cir. 2010) ("in *Giglio v. United States*, 405 U.S. 150, 154 . . . (1972), the Supreme Court extended the prosecution's *Brady* obligation to include the disclosure of evidence affecting the credibility of a witness.")

proceeding where a U.S. citizen is being denied life, liberty and justice. The requested documents will be used for the sole purpose of evidence of misconduct and the violation of FEDERAL LAWS and STATUES.  Failure to release the requested documents is evidence of a corrupt act, which will be viewed by the public as aiding the denial of a citizen of AMERICA his constitutional rights to due process of law.

(Exhibit 3.)   Wright's appeal was denied by OIP.  (Exhibit 4.)

## THE FOIA REQUEST AT ISSUE

By email dated November 30, 2013, Jeremy Gordon, an attorney, submitted the following FOIA request to the EOUSA on behalf of Wright:

> In accordance with the provisions of the Freedom of Information, I request that I be provided with copies of any and all documents, notes, and other records reflecting a grant of immunity or non prosecution to individuals who testified or cooperated in any fashion in United States v. Marty Lorenzo Wright, Nos. 4:1995CR00039, 4:1995CR00044 (E.D. Virginia). To the extent responsive records may be subject to redaction, I request all reasonably segregable portions of all responsive records.
>
> I agree to pay up to $25 in the processing of this request. In addition, an executed Certification of Identity form is attached authorizing the disclosure of records from Mr. Wright's case to my office.

(Exhibit 5, Request & Wright Certification.)  EOUSA interpreted Mr. Gordon's request as seeking the same records as Wright's earlier request, and so did not respond to it. *See* Luczynski Dec. ¶ 14-15.  On April 3, 2014, the instant Complaint was filed asking that the Department of Justice be compelled to produce the documents.

EOUSA states that "since the request  is for third party information, it is rejected based on third party categorical denial,"  and that it is not required to search for the requested documents pursuant to Exemptions 6 and 7(C).( Luczynski Dec. ¶¶  16,18-19, 26.)

**Standard of Review**

### Motion for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

> Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C.Cir.2002). In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

*American Immigration Lawyers Ass'n v. U.S. Dept. of Homeland Security*, 852 F.Supp.2d 66, 72 (D.D.C. 2012)

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show, if applicable, that the documents are exempt from disclosure. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980);. Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the agency.'" *Public Citizen, Inc. v. Dept. of State*, 100 F.Supp.2d 10, 16 (D.D.C. 2000)(reversed in part on different issue by 276 F.3d 634 (D.C.Cir.2000) (quoting *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

**FOIA Exemption 6**

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has interpreted the phrase 'similar files' to include all

information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted), *citing United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose,* 425 U.S. 352, 372 (1976). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), *quoting United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994). *See also Reporters Committee*, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id*. at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

The EOUSA takes the position that Exemption 6 is applicable in each instance in which it also invoked exemption 7(c), as is described below.

**FOIA Exemption (7)(C)**

Exemption 7(C) authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice*, 475 F.3d 381, 366, (D.C. Cir. 2007), *citing Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172, (2004). If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish* at 174.

The EOUSA satisfies the standard for invoking Exemption 7 of the FOIA because of the United States Attorneys' law enforcement mission and responsibilities for enforcement of criminal statutes. *See Rugiero v. United States Dept. of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that the "Court has adopted a per se rule" that applies not only to criminal enforcement actions, but to "records compiled for civil enforcement purposes as well."). Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court affirmed the broad scope of Exemption 7(C) in *National Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004). When a criminal law enforcement agency invokes Exemption 7, it

"warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987), citing *Pratt*, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Keys*, 830 F.2d at 340, *quoting Pratt*, 673 F.2d at 421. Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776 80 (1989). Only where the requester can produce meaningful evidence -- "more than a bare suspicion" -- which would cause a reasonable person to believe that the government had engaged in impropriety should the Court even consider balancing the privacy interests against the public interest in disclosure. *Favish*, 124 S. Ct. at 1581.

The records responsive to plaintiff's request, if any, relate to a criminal enterprise investigation and prosecution involving a conspiracy to distribute controlled substances and firearms counts. Thus, there is no doubt that this investigation and prosecution falls within the law enforcement duties of the Department of Justice. Accordingly, the information readily meets the threshold requirement of Exemption (b)(7). *See Davis v. Dep't of Justice*, 970 F. Supp 2d 10, 17-18 (D.D.C. 2013).

**"Categorical" Treatment of FOIA Requests**

The leading case concerning categorical treatment of FOIA requests for a particular type of document based on privacy interests is *U.S. Dept. of Justice v. Reporters Committee For*

*Freedom of Press*, 489 U.S. 749 (1989) in which the requester was seeking the rap- sheet of a particular named individual. There the Supreme Court stated:

> The privacy interest in maintaining the practical obscurity of rap-sheet information will always be high. When the subject of such a rap sheet is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of "what the Government is up to," the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir. See Parts IV and V, supra. Such a disparity on the scales of justice holds for a class of cases without regard to individual circumstances; the standard virtues of bright-line rules are thus present, and the difficulties attendant to ad hoc adjudication may be avoided. Accordingly, we hold **as a categorical matter** that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted."

*Reporters Committee* , 489 U.S. at 780 (emphasis added.). The Supreme Court specifically distinguished the rap-sheet data compilations concerning a third party from information that might shed light on the conduct of a government agency as follows:

> In this case-and presumably in the typical case in which one private citizen is seeking information about another-the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed any light on the conduct of any Government agency or official.)
>
> The point is illustrated by our decision in *Rose,* supra. As discussed earlier, we held that the FOIA required the United States Air Force to honor a request for in camera submission of disciplinary-hearing summaries maintained in the Academy's Honors and Ethics Code reading files. The summaries obviously contained information that would explain how the disciplinary procedures actually functioned and therefore were an appropriate subject of a FOIA request. All parties, however, agreed that the files should be redacted by deleting information that would identify the particular cadets to whom the summaries related. The deletions were unquestionably appropriate because the names of the particular cadets were irrelevant to the inquiry into the way the Air Force Academy administered its Honor Code; leaving the identifying material in the summaries would therefore have been a "clearly unwarranted" invasion of individual privacy. If, instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about the persons to whom those files related, the public interest that supported the decision

in *Rose* would have been inapplicable. In fact, we explicitly recognized that "the basic purpose of the [FOIA is] to open agency action to the light of public scrutiny." *Id*., at 372, 96 S.Ct., at 1604.

*Reporters Committee* , 489 U.S. at 773-774. .

Another context in which a categorical determination has generally been used in the context of the privacy exemptions is when the requester seeks information about particular named third party individuals. These are generally termed "third-party" requests.

The *SafeCard* rule applies to the categorical exemption, under Exemptions 6 and 7(C) to third party names and identifying information *See Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 896, (D.C. Cir. 1995):

> *SafeCard* permits an agency to withhold "the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [unless disclosure] is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Id.* at 1206. It is one in a long line of FOIA cases holding that disclosure of the identities of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy and is thus exempt under 7(C). . . . . In *SafeCard*, the court relied on those cases to formulate a **categorical rule** denying disclosure of such information unless the requester can show that the records would confirm or refute allegations of illegal agency activity.
>
> We agree with the agency and the district court that, to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are **categorically exempt** from disclosure under *SafeCard***.** But we do not read *SafeCard* as permitting an agency to exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address. Because such a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files, it would be contrary to FOIA's overall purpose of disclosure, and thus is not a permissible reading of Exemption 7(C).
>
> As a general rule, *SafeCard* directs an agency to redact the names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons.

*Nation Magazine, Washington Bureau v. U.S. Customs Service* , 71 F.3d 885, 896, 315 (D.C.Cir. 1995)(emphasis added.)  EOUSA generally asserts a categorical exemption, under Exemptions 6 and 7(C), when it receives requests for information pertaining to a third party.  See Luczynski Dec. ¶¶ 17-18;  see e.g. *Davis*, 970 F. Supp.2d at 18 (upholding EOUSA's categorical application of Exemptions 6 and 7(C) in response to request seeking DNA evidence of third parties).

The District of Columbia Circuit has also recently discussed the limited nature of the privacy exemption to information disclosing the identities of private citizens:

> As we have explained, however, *SafeCard* "is one in a long line of FOIA cases holding that disclosure of the identities of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy." *Nation Magazine,* 71 F.3d at 896 (emphasis in original) (collecting such cases). Here, however, the DOJ does not seek to withhold only the identities of private citizens; it seeks to withhold every responsive document in toto.  Although *SafeCard* may authorize the redaction of the names and identifying information of private citizens mentioned in law enforcement files, it does not permit an agency "to exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address." *Id*.; s*ee also Schrecker*, 349 F.3d at 666 (explaining that *SafeCard* rule applies to names and identifying information); *Mays v. DEA*, 234 F.3d 1324, 1328 (D.C.Cir.2000) (investigative details is "a category presumably distinct from, and potentially far broader than" personal information).

*Citizens for Responsibility and Ethics in Washington*, 746 F.3d at1094.

Thus, in the context of privacy exemptions the "categorical" response to requests such as that made in this case by Mr. Gordon has generally been held to be applicable to third party requests, i.e., requests for information about particular named individuals.   For example  in the *Blackwell*  case, Blackwell's counsel asked for information about specifically named people such as his wife and in-laws. The FBI searched for information using Blackwell as the search criteria, but refused to use the names of the third party individuals as search criteria.  It then redacted out

12

information that fell within the Privacy exemptions. *See Blackwell v. F.B.I,*. 680 F.Supp.2d 79, 87 (D.D.C.2010). The D.C. Circuit upheld the refusal to search using the individual's names as search criteria absent waivers or proof of death. *Blackwell v. F.B.I.* 646 F.3d 37, 42-43, 396 (D.C. Cir. 2011). In *Lewis v. Department of Justice*, 609 F.Supp.2d 80, 82 (D.D.C.2009), EOUSA categorically denied plaintiff's request for third-party records under FOIA exemptions 6 and 7(C), because the request asked for information concerning Sarah Blair by name. The District Court upheld EOUSA's refusal to search for the records stating:

> Plaintiff seeks the information about Blair allegedly to prove her "misconduct," and/or that of an assistant United States attorney, during his criminal prosecution. (Pl.'s Affidavit in Support of Continuance at 2) FN4; see Pl.'s Mem. of P. & A. *85 at 2 ("Plaintiff's claim to agency records stems from post trial discovery of misconduct by [the AUSA], for *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) violation."). It is established, however, that the public interest in disclosure "does not include helping an individual obtain information for his personal use" to overturn a conviction. *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C.Cir.2002), vacated and remanded on other grounds, 541 U.S. 970, 124 S.Ct. 1903, 158 L.Ed.2d 464 (2004), reinstated, 378 F.3d 1115 (D.C.Cir.2004) (citation omitted). Plaintiff's allegation of misconduct "reveals little or nothing about an agency's own conduct." *Fischer,* 596 F.Supp.2d at 47 (*quoting Willis v. U.S. Dep't of Justice*, 581 F.Supp.2d 57, 76 (D.D.C.2008)) (other quoted citation omitted). Nor does it "show a pattern of government wrongdoing as could overcome the significant privacy interest at stake." *Boyd*, 475 F.3d at 389. He therefore has not demonstrated the public's entitlement to the otherwise exempt third-party information. Thus, whether defendant actually searched for records, see Compl. at 1, "is immaterial ... because that refusal deprived [plaintiff] of nothing to which he is entitled." *Edwards v. Dep't of Justice*, No. 04–5044, 2004 WL 2905342, at *1 (D.C.Cir. Dec. 14, 2004).

*Lewis v. Department of Justice,* 609 F.Supp.2d 80, 84 -85 (D.D.C.2009). However, the D.C. Circuit has since then cautioned that

> To the extent the government's position suggests that when a requester seeks exculpatory evidence for purposes of a direct appeal or a collateral attack on his conviction disclosure of such information is categorically not in the public interest for purposes of FOIA Exemption 7(C), this misreads precedent. To the contrary, an individual's "personal stake in the release of the requested information is 'irrelevant' to the balancing of public and third-party privacy interests required by

> Exemption 7(C)," *Roth v. Dep't of Justice,* 642 F.3d 1161, 1177 (D.C.Cir.2011) (*quoting Mays v. DEA*, 234 F.3d 1324, 1327 (D.C.Cir.2000)), and "the public might well have a significant interest in knowing whether the federal government engaged in blatant Brady violations," *id*. This court has not applied a per se rule and does not do so today.

*Blackwell,* 646 F.3d at 43(Rogers concurring.)

Although Wright's attorney in the FOIA request at issue in this litigation has not requested records concerning a grant of immunity or non-prosecution of any named individuals, EOUSA contends that it is not required to conduct a search for responsive information using search terms such as Wright's name and the case file numbers identified in the request for the reasons set forth in the Luczynski Declaration at paragraphs 18-38.

Specifically, EOUSA views Wright's FOIA request as a "third party request," subject to a categorical denial, because "any information that he requested would be applicable to third parties and no[t] to himself." *Id.* ¶ 23. EOUSA further "determined that third parties had a privacy interest in the records requested by plaintiff" because they have a strong interest in protecting the privacy of their names and identifying information. *Id.* ¶¶ 29-30. EOUSA then "concluded that plaintiff failed to make any showing that disclosure of any records related to immunity agreements would shed light on, and significantly inform, the public about the operation and activities of the Executive *Branch."* *Id.* ¶ 30. Applying Exemption 7(C), "EOUSA categorically denied access to these law enforcement records as disclosure could reasonably be expected to constitute an unreasonable invasion of personal privacy." *Id.* ¶ 34. EOUSA applied the same analysis to categorically deny the request under Exemption 6. *Id*. ¶ 37 (finding Exemption 6 categorically applicable "because plaintiff failed to proffer an overriding public interest."). Consequently, EOUSA has neither conducted a search for responsive records, nor conducted a segregability review of any responsive records that may exist.

**CONCLUSION**

For all the reasons set forth in its declaration, EOUSA requests that the Motion for Summary Judgment be granted and Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

RONALD C. MACHEN Jr., D.C. Bar #447889
United States Attorney

DANIEL F. VAN HORN
D.C. Bar # 924092
Civil Chief

By:   /s/ Rhonda C. Fields
      RHONDA C. FIELDS
      Assistant United States Attorney
      Civil Division
      555 Fourth Street, N.W.
      Washington, D.C. 20530
      202/252/2555
      Fax:   202/252/2599
      rhonda.fields@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARTY LORENZO WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 14-558 (ESH) |

STATEMENT OF MATERIAL FACTS

Defendant respectfully submits this statement of material facts as to which there is no genuine issue.

1. By email dated November 30, 2013, Jeremy Gordon, an attorney, submitted the following FOIA request to the EOUSA on behalf of Marty Lorenzo Wright:

> In accordance with the provisions of the Freedom of Information, I request that I be provided with copies of any and all documents, notes, and other records reflecting a grant of immunity or non prosecution to individuals who testified or cooperated in any fashion in United States v. Marty Lorenzo Wright, Nos. 4:1995CR00039, 4:1995CR00044 (E.D. Virginia). To the extent responsive records may be subject to redaction, I request all reasonably segregable portions of all responsive records.
>
> I agree to pay up to $25 in the processing of this request. In addition, an executed Certification of Identity form is attached authorizing the disclosure of records from Mr. Wright's case to my office.

(Luczynski Dec. ¶ 12.)

2. EOUSA did not respond to the request. Complaint ¶ 7.

Respectfully submitted,

RONALD C. MACHEN Jr., D.C. Bar #447889
United States Attorney

DANIEL F. VAN HORN
D.C. Bar # 924092
Civil Chief

By:   /s/ Rhonda C. Fields
      RHONDA C. FIELDS
      Assistant United States Attorney
      Civil Division
      555 Fourth Street, N.W.
      Washington, D.C.  20530
      202/252/2555
      Fax:   202/252/2599
      rhonda.fields@usdoj.gov